**Appeal of Neshaminy Auto Villa, Inc.**

*Henry F. Huhn,* for appellant.
*Emil F. Toften,* for zoning hearing board.

WALSH, *J.,* July 2, 1975.—This is a property owner's appeal from a decision of the Zoning Hearing Board of Bensalem Township refusing to order the reissuance of a revoked building permit and refusing the grant of a variance from the rear-yard dimensional requirements of the township zoning ordinance.

The appellant corporation is a small retail tire sales and service establishment operated principally by its two owners. It occupies a structure which was designed and used by its former owner as a typical two-bay gasoline service station on a lot zoned C-general commercial. In order to provide for expansion of its business, appellant applied to the zoning officer for a permit to construct an addition to its building. The permit was issued but was revoked some days later when a question arose as to the applicability of an amendment to the zoning ordinance affecting the permissible size of yards adjacent to residence districts.

Where, as here, the court has taken no additional evidence, our scope of review is limited to a determination of whether the board has abused its discretion or committed an error of law. Appellant asks this court to find that the zoning hearing board committed an error of law when it interpreted the amendatory ordinance No. 173 to effect a change in the yard-size regulations contained in article VI (C-general commercial). An examination of the basic ordinance discloses that it specifies minimum widths and depths for front, side and rear yards in all of its eight major district classifications. In three of these classifications (highway commercial, light manufacturing, and general manufacturing) the ordinance contains special provisions controlling the width and depth of "Yard Adjacent to Residence District."

The amendatory ordinance in question is titled:

"An ordinance amending the Zoning Ordinance of December 6, 1954, of the Township of Bensalem by amending certain portions of the R-A, R-1, R-2, R-3, R-4, M-H, C-D, C-H, M-2 districts and Article XI general regulations and Article XVI definitions to redefine and define certain terms, to add new definitions, and correct certain discrepancies contained therein."

Among several amendments in ordinance No. 173 is an amendment to section 1600 under "Definition of Terms" whereby the amendatory ordinance adds a new subsection (25 f ) as follows:

"f. *Yard Adjacent to Residence District.*

"1. Whenever any commercial district abuts any rural or residence district boundary line, a yard shall be provided which shall not be less than seventy-five (75) feet in width, measured from such boundary line."

The zoning hearing board appears to have con-

strued this provision to apply to the yard dimensional requirements in all of the eight major district classifications. The appellant reasons this amendment is intended to apply only to those portions of the basic ordinance wherein the phrase "Yard Adjacent to Residence District" already appears.

Rules of statutory construction are applicable to statutes and ordinances alike: Donahue v. Zoning Board of Adjustment, 412 Pa. 332, 334 (1963). The polestar for construction of a statute or ordinance is the intention of the legislative body: Clearview Bowling Center v. Hanover Borough, 430 Pa. 579, 582 (1968). An ordinance, like a statute, must be construed, if possible, to give effect to all of its provisions: Fidler v. Zoning Board, 408 Pa. 260, 267 (1962). The title and preamble of an ordinance are a part thereof, and must be considered in construing the ordinance: Starkey v. Philadelphia, 397 Pa. 512, 517 (1959). Where a statute or ordinance defines a word or phrase therein, the court is bound thereby, although such definitions may be different from ordinary usage: Hughes v. Pittsburgh, 379 Pa. 145, 148 (1954). Whenever a part of a statute is amended, the remainder of the original statute and the amendment shall be read together and viewed as one statute passed at one time: Statutory Construction Act of December 6, 1972, P. L. 967 (No. 290), 1 Pa. S. §1953.

Applying the foregoing principles, we conclude that the amendatory definition "Yard Adjacent to Residence District" was intended to supply a definition of a phrase used in the original ordinance but not defined therein. It follows that the definition was intended as an aid in determining the meaning of such portions of the original ordinance which contain the quoted phrase and that the framers did not intend to make

any changes in classifications where the phrase did not appear. To hold otherwise would require us to disregard the title and preamble of the amending ordinance which states as one of its purposes the adding of new definitions. If the legislative body had intended to change the rear-yard depth requirements in the C-general commercial district, it could have easily stated that intention. We find, therefore, that the rear-yard minimum depth requirement applicable here is 25 feet as required in the basic ordinance, and not 65 feet as required in certain other district classifications under the amendatory ordinance. Since the plan filed with the board provides for a rear-yard depth of 40 feet, a variance of this nature is unnecessary.

The record indicates that the building permit was revoked solely on the basis of an interpretation of the amendatory ordinance, which interpretation we now find to be erroneous. It may be that this court has the power to order a reissuance of the permit for this reason alone, but we prefer to address our attention to another aspect of the case—namely, the discussion in the record concerning nonconforming uses. The board found that the proposed addition surpassed the permissible expansion limits of a nonconforming use. Without question, an accessory use (viz., tire sales under the former owner) cannot be the basis for the establishment of a nonconforming principal use: Stokes v. Zoning Board of Adjustment, 402 Pa. 508 (1961). But the record does not reflect that the board was asked to decide the question of whether the existing use is, in fact, nonconforming. The existing use is a retail tire sales and service outlet as stated in the board's finding of fact number 3. Among the permissible uses in C-general commercial districts, wherein appellant's property lies, is "retail store or establish-

ment." The question of whether the stated use conforms to the ordinance presents itself. Although the applicant did not press the question before the board, this court may consider it: Dooling's Windy Hill, Inc. v. Zoning Board of Adjustment, 371 Pa. 290, 296-7 (1952); Cutler v. Cheltenham Township, 82 Montg. 89, 92 (1963).

On the present record, there is insufficient evidence and insufficient findings of fact to resolve it. For example, attached to applicant's brief are copies of two occupancy permits one of which is for a gas station stated under "Remarks" to be nonconforming and the other changing the use to tire sales, etc. without stating the new use to be nonconforming. We may not consider the inferences to be drawn from this circumstance unless and until the permits are offered in evidence before the board. Secondly, there is no express finding by the board that the existing use is not permitted in C-general commercial districts, except as may be inferred by its conclusion of law number 1 that the use is appropriate in the special commercial district. We feel it is necessary that additional evidence be presented to the board on the foregoing question. It should include a more detailed description of the applicant's business operations than is in this brief record in order to assist the board and the court in determining the precise nature of the principal use and accessory uses, if any.

Oral argument before a court en banc was held on June 2, 1975. Argument was presented on behalf of appellant, but no one appeared on behalf of the township. The solicitor for the zoning hearing board, upon asking leave to present argument, was informed that the members of the court do not consider zoning hearing boards to be parties on appeal to this court and that argument on behalf of the board would be inappropriate.

The assigned judge has now received a request on behalf of the township that the court relist the matter to afford the township another opportunity to present its position. An examination of the prothonotary's docket discloses that the township solicitor withdrew his appearance without leave of court, contrary to local rule, and elected not to attend argument. Under these circumstances, we find insufficient reason to relist the matter. We have, however, included in our study of the case on the merits the brief filed by the board's solicitor because it is said to reflect the township's position and because there may have been a misunderstanding between the solicitors for the township and board as to their respective roles at argument in this court. In receiving this brief, we do not intend any weakening of the prohibition against the same solicitor representing both the board and township.

## ORDER

And now, July 2, 1975, it is ordered that the matter is remanded to the zoning hearing board for further proceedings consistent with the foregoing opinion.