[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the Defendant's affirmation of a cease and desist order issued by The Zoning Enforcement Officer. The plaintiff is aggrieved by the decision of the defendant.
Judicial review of decisions of zoning boards of appeal is limited to whether or not a decision is unreasonable, arbitrary, or illegal. The court may not weigh the evidence nor substitute its discretion for that of the board. Lawrence v. Zoning Board of Appeals, 158 Conn. 509 (1969).
The plaintiff here maintains, that he has the right to park his septic cleaning trucks on his property by virtue of a nonconforming use of the property for the parking or storage of CT Page 803 large trucks. The plaintiff bears the burden of proving this non-conforming use.
Cheshire's Zoning Regulations permit the continuation of non-conforming use as follows:
 Within the districts established by these Regulations or amendments that may later be adopted, there exist uses, structures or lots which were lawful before these Regulations were passed or amended, but which would be noncomplying under the terms of these Regulations. Such uses, structures and lots are termed nonconformities. It is the intent of these Regulations to permit these nonconformities to continue until they are removed. R-5 Cheshire Zoning Regulations, Section 24.
To establish the existence of a nonconforming use, the plaintiff must prove two things: First, that the use was lawful at the time of its establishment and second, that the use was in existence prior to the time the Zoning Regulations prohibiting such use were established. Helicopter Associates, Inc. v. Stamford, 201 Conn. 700, 712 (1986).
Once the existence of a non-conforming use is proven, the use must be examined to determine if it has changed.
 The rule concerning the continuance of a nonconforming use protects the right of a user to continue only the same use of the property as it existed before the date of the adoption of the Zoning Regulations. . . . Karls v. Alexandra Realty Corp., 179 Conn. 390, 398
(1980).
Once a non-conforming use changes, the non-conformity must lessen or cease. Connecticut Sand and Stone Corp. v. Zoning Board of Appeals, 150 Conn. 439, 432 (1963); Darien v. Webb,115 Conn. 581, 585 (1932). The Cheshire regulations provide, in Section 24.6:
 No nonconforming use of land or a structure or a nonconforming structure shall be changed CT Page 804 except to a conforming use or structure, but may as a Special Permit as provided in Section 40, be changed to another nonconforming use or structure provided such use or structure is found to be more nearly conforming to these Regulations. No nonconforming use of land or a structure or nonconforming structures if once changed to conform or to more nearly conform to these Regulations as provided above, shall thereafter be changed so as to be less conforming again.
Abandonment or cessation of a nonconforming use requires some type of "intention" on the part of the owner to abandon or to cease the nonconforming use. Blum v. Lisbon Leasing Corp.,173 Conn. 175, 182 (1977) (citations omitted). This "intention" maybe inferred from the surrounding circumstances. Id. Therefore, even if a property owner does not verbally declare his intention to abandon a use, his actions in stopping one use and changing to a different use is evidence of intent to abandon. See Blum, supra and Town of Darien v. Webb, supra.
At the heart of this case is the plaintiff's assertion that the property have two separate non-conforming uses, a commercial non-conforming use and a parking or vehicle storage non-conforming use. This leads to the question of what constitutes a principal or an accessory use.
The Cheshire Zoning Regulations, until 1975, specifically considered parking an "accessory use." See Appendix (Regulations). Cheshire' Zoning Regulations have historically referred to accessory uses as those "customarily incidental to a ;permitted use." R-7.b.2., Section 4.1.11; R-7.b.3, Section 4.1.11; or "customarily with and incidental to any aforesaid permitted use. . . ." R-7.d.ZEO-2, Section 30, Schedule A, Paragraph 60; R-7.d.ZEO-6, Section 30, Schedule A, Paragraph 60; or "customarily associated with or incidental to any permitted use in any residential zone. . . ." R-7.d.ZEO-7, Section 30, Schedule A, Paragraph 60.
The Supreme Court in Lawrence, supra, defined accessory use as "a use which is dependent on or pertains to the principal or main use." Id. at p. 512. The Supreme Court, in D J Quarry Products, Inc. v. Planning and Zoning Commission, 217 Conn. 447
(1991), stated that "[b]y definition, accessory uses must be CT Page 805 located on the same lot, and must be subordinated and customarily incidental the principal use." Id. at p. 456.
The Court recognized that determining whether a use is an accessory use, "may often present and depend upon questions of fact, or involve or be open to a legal exercise of discretion by the administrative officials and the board of appeals . . . [It becomes] the duty of the zoning board of appeals to decide, within prescribed limits and consistent with the exercise of legal discretion, the application of the ordinance to the instant facts. The board's decision may only be overturned if it is illegal, arbitrary or unreasonable. Lawrence, supra at p. 514.
Neither party has briefed any Connecticut case which determines whether an accessory use can or cannot form the basis for establishment of a non-conforming use. But the defendant has cited other authority which asserts one cannot. McQuillin, Municipal Corporation s, Section 25.186 (3d Ed.). See also Stokes v. Zoning Board of Adjustment, 402 Pa. 50-8, 167 A.2d 316
(1961) (Appendix No. 2) and Knowlton v. Browning-Ferris Industries of Virginia, Inc., 220 Va. 571, 260 S.E.2d 232 (12979) (Appendix No. 3). This position makes sense, as an accessory use is always dependent, for its existence on a principal use. On the other hand, to the extent that the plaintiff can prove a pre-existing and valid non-conforming principal use (parking) then that use may continue if it has not been abandoned.
Because the determination of principal or accessory use is fact driven, the Board was required to decide whether the evidence established that the parking of trucks at the premises over the years constituted a non-conforming use. It, therefore, examined the parking use to ascertain its character. See West Hartford v. Rechel, 190 Conn. 114, 119 (1983). The Board found the parking, accessory, dependent as it was upon the non-conforming, principal business uses (the rack body manufacturing. e.g.). When the parking was conducted as a principal or main use, the board concluded that it was "illegal", as it was not the continuation of a principal use which was non-conforming.
The board's conclusion that the parking use was always accessory to a business use, (which principal use ended when farming operations began) is supported by the evidence.
The board was not required to believe any witnesses or to credit any evidence presented to it. Gulf Oil Corp. v. Board of CT Page 806 Selectmen, 144 Conn. 61, 65-66 (1956). The board is to determined what weight to give the testimony or evidence presented. Parsons v. Zoning Board of Appeals, 140 Conn. 290-293 (1953); Magnano v. Zoning Board of Appeals, 188 Conn. 225, 229
(1982). Similarly, the board's assessment of the various business uses on the property, and whether they were continuing non-conformities or illegal is within its discretion.
As to the plaintiff's constitutional issues, they have not been properly pleaded before the court, and should not therefore be considered in this appeal. While the plaintiff may not be estopped from attacking the regulating scheme, a declaratory action is preferable. In Helbig v. Zoning Commission, 185 Conn. 294
(1981), action by the plaintiff, the plaintiff had filed a declaratory action in addition to his appeal, and this constitutional issue was heard in the appeal by the agreement of the parties. Id. at 300.
The appeal is dismissed.
Gordon, Judge