The METROPOLITAN DEVELOPMENT COMMISSION OF MARION COUNTY, Appellant (Plaintiff Below),

v.

George MARIANOS d/b/a George's Garage, Appellee (Defendant Below).

No. 2–278A44.

Court of Appeals of Indiana, Second District.

Nov. 7, 1979.

Larry F. Whitham, Asst. Corp. Counsel, Metropolitan Development Commission, Indianapolis, for appellant.

John D. Raikos, Raikos & Raikos, Indianapolis, for appellee.

## MEMORANDUM DECISION

SHIELDS, Judge.

The Metropolitan Development Commission of Marion County (MDC) appeals from the trial court's denial of its prayer for injunctive relief against certain commercial uses of industrially zoned property leased by George Marianos, doing business as George's Garage.

The facts are as follows:

In 1969 Marianos leased property located at 748 Kentucky Avenue, Indianapolis, Indiana from Frank's Brake Service, Inc. The property was previously used, originating in the 1940's, as a gasoline service station and repair garage. When Marianos' gasoline supplier, Gulf Corporation, ceased doing business in Indiana, the primary business of the property became automobile salvage and automobile repair.

Since 1963 the property in question has been zoned I–4–U by the Industrial Zoning

Ordinance of Marion County. The I–4–U district is an industrially zoned district which allows for certain enumerated less intensive uses. However, the I–4–U district does not permit gasoline stations, automobile repair garages, or automobile salvage operations. Marianos did not dispute his noncompliance with the ordinance. Rather, he asserted the affirmative defense of a nonconforming use.

At the request of Marianos and pursuant to Indiana Rules of Procedure, Trial Rule 52, the trial court made the following special findings and conclusions:

## FINDINGS OF FACT

1. The Metropolitan Development Commission of Marion County, Indiana, is a governmental entity created by Chapter 173 of the Acts of the Indiana General Assembly for the year 1969 and exercises all powers conferred upon the Metropolitan Plan Commission of Marion County by Chapter 283 of the Acts of the Indiana General Assembly for 1955, as amended.

2. The Defendant, George Marianos, is presently doing business as George's Garage upon the following described real estate commonly referred to as 748 Kentucky Avenue, Indianapolis, Indiana:

> Part of Out Lots 130 and 132 of the Donation Lands of the City of Indianapolis, specifically; Beginning at the intersection of the Northwest line of Kentucky Avenue and the south line of Oliver Street, west on and along the south line of Oliver Street 162.64 feet, thence south 191.97 feet to a point on the northwest line of Kentucky Avenue, thence northeast on and along the northwest line of Kentucky Avenue 236.17 feet to the point of beginning.

3. Said real estate is owned by Frank's Brake Service, Inc., an Indiana Corporation, not a party to these proceedings.

4. The Defendant occupied said premises prior to 1969, and conducted operations which he has continued to conduct to this day, including repairs of motor vehicles, storage and overhauling of cars.

5. Said real estate is zoned I–4–U by the Industrial Zoning Ordinance of Marion County, Indiana.

6. The Defendant conducts his garage business upon said premises and makes his livelihood on a full-time basis working seven days a week.

7. Defendant has operated his business prior to the passage of the Act which created the Plaintiff.

8. To enjoin Defendant from conducting his operations upon said premises would deprive Defendant of a livelihood and would deny Defendant the rights guaranteed him by the Indiana and Federal Constitutions.

9. Across the street from the subject real estate is Hetherington & Berner, an empty building formerly a foundry.

10. Across the street and not far from the subject real estate is an empty building, formerly an abattoir used by Stark & Wetzel in the killing of livestock.

11. Within two blocks of the property is Diamond Chain, a heavy industrial factory.

12. Within three blocks of the property Indianapolis Power and Light Company maintains a large power generating plant.

13. There has always been a junk yard within four blocks of the property.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter.

2. There is no duty upon the Defendant to maintain his business upon said real estate for the use and benefit of the Plaintiff or for the use and benefit of his neighbors at his expense.

3. The Defendant is allowed to make reasonable use of his real estate and such use is compatible with the uses made by Defendant for many years.

4. The use which Defendant makes of his property precedes the passage of the Act and entitles Defendant to the Grandfather's Clause privileges.

5. There is no duty upon the part of Defendant to provide at his expense a visual corridor in order to please Plaintiff or his neighbors.

6. The law is with the Defendant and against the Plaintiff and the Court is without jurisdiction to grant the injunctive relief sought by the Plaintiff as it violates the constitutional rights of Defendant.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the injunction sought by Plaintiff is hereby denied and that the costs herein be assessed against Plaintiff.

On appeal MDC argues the decision of the trial court is contrary to law. Specifically, it contends the findings are insufficient to warrant the trial court's conclusion granting Marianos protection under the "Grandfather Clause." [1]

We reverse and remand.

■■■ As stated, pursuant to a T.R. 52 request of Marianos, the trial court made special findings and conclusions. Findings will be construed together and will be liberally construed in support of the judgment. *In re Marriage of Miles*, (1977) Ind.App., 362 N.E.2d 171, 174; *Scott v. Kell*, (1956) 127 Ind.App. 472, 134 N.E.2d 828. However, it also has been generally held that nothing can be added to a special finding of fact by presumption, inference or intendment. *Blake v. Hosford*, (1979) Ind.App., 387 N.E.2d 1335, 1338; *Cook v. Michigan Mutual Liability Co.*, (1972) 154 Ind.App. 346, 289 N.E.2d 754.

The trial court concluded Marianos had a legally established nonconforming use. Section 2.00 of the ordinance specifically excepts "legally established non-conforming uses" from zoning requirements, although it does not define the term. Nonconforming use is a term of art in zoning law applied to land uses that are:

permitted by zoning statutes or ordinances to continue notwithstanding simi-

lar uses are not permitted in the area in which they are located. A non-conforming use has been defined as the use of a building or land that does not agree with the regulations of the district in which it is situated. A non-conforming use of land or buildings entitled to protection against a zoning restriction is one that existed and was lawful when the restriction became effective and which has continued to exist since that time. A nonconforming use is a lawful use existing on the effective date of the zoning restriction and continuing since that time in nonconformance to the ordinance. (footnotes omitted.)

4 Yokely, *Zoning Law and Practice*, § 22–2, p. 2–3 (4th ed. 1979).

■■■ Turning to the Indiana law of nonconforming use, it is settled that an alleged nonconforming use must be shown to have existed on the date the relevant zoning classification becomes effective. It is not sufficient to show such a use merely existed at some time prior to that date. *Ashley v. City of Bedford*, (1974) 160 Ind. App. 634, 312 N.E.2d 863; *O'Banion v. State ex rel. Shively*, (1969) 146 Ind.App. 223, 253 N.E.2d 739. Although no Indiana decision has specifically reached this point, it is also recognized for a nonconforming use of property to have continued recognition it must be a *lawful* use in existence prior to the enactment of the zoning regulation involved. Thus, a prior use of unauthorized character, or a business or activity carried on in violation of the law, may not be continued as a nonconforming use. 4 *Yokely, supra*, at § 2202, p. 4; 3 Rothkopf, *The Law of Zoning and Planning*, § 88–4, pp. 58–15 to 18 (4th ed. 1979).

■■■ The trial court failed to make the necessary findings under T.R. 52 to justify its conclusion that Marianos was entitled to a nonconforming use of "Grandfather Clause" privileges. "Special findings are

---

1. While the ordinance involved has no provision entitled or referring to a "Grandfather's Clause," it is obvious the trial court was referring to the nonconforming use section of the ordinance. Section 2.00 of the ordinance specifically excepts "legally established non-conforming uses" from compliance with the zoning requirements.

intended to preserve grounds for error in this court by disclosing the factual basis for the legal theory applied below." *Indianapolis Raceway Park, Inc. v. Curtiss*, (1979) Ind.App., 386 N.E.2d 724. The Court of Appeals has also held:

> [W]hether the findings are adequate depends upon whether they are sufficient to disclose a valid basis under the issues for the legal result reached in the judgment. In making this determination a reviewing court will accept the findings made by the trial court if they are supported by evidence of probative value.'

*In re Marriage of Miles, supra*, at 174 (citations omitted).

Only two of the trial court's findings arguably address the elements of a nonconforming use. Finding 4 states: "The Defendant occupied said premises prior to 1969, and conducted operations which he has continued to conduct to this day including repairs of motor vehicles, storage and overhauling of cars." The other, Finding 7, states: "The Defendant has operated his business prior to the passage of the Act which created the Plaintiff."

Finding 4 is essentially irrelevant. The 1969 date cited does not preexist the 1963 enactment date of the zoning ordinance involved. Thus it does not address the question of whether Marianos or his predecessor used the property in the manner in which it is presently used.

Finding 7 is also irrelevant.[2] That Marianos operated his business prior to the passage of the act creating the MDC is of no consequence. It is true that Ind.Code §§ 18–4–8–8 and 9 (1976), which created the MDC, only date back to 1969. However, the Metropolitan Plan Commission was the enforcement agency before 1969 and under

**2.** This finding is also contrary to the evidence. Marianos's own testimony placed his starting of the business at "six and one half years" ago. Trial was held February 16, 1977, which puts the commencement date somewhere around August, 1970. The MDC was created in 1969. No other evidence establishing an earlier date appears in the record.

**3.** Except as otherwise provided in this act and subject to the limitations contained herein, the

the authority of IC 18–4–8–9(1)[3] the MDC assumed its powers and duties. Thus the MDC simply took over the role of the metropolitan plan commission, and one part of this was the enforcement of the ordinance at issue, which was enacted in 1963.

■ Thus, the trial court failed to make adequate findings to disclose a legal basis for its conclusion "The use which Defendant makes of his property precedes the passage of the Act and entitles Defendant to the Grandfather's Clause privileges." No findings were made indicating the use was lawful before the Industrial Zoning Ordinance was passed or the use existed on the date the ordinance became effective.

We reverse and remand this cause to the trial court with instructions to enter judgment for the Metropolitan Development Commission.

BUCHANAN, C. J., and MILLER, P. J., sitting by designation, concur.

metropolitan development commission shall: (1) Constitute and assume the status of a metropolitan plan commission of the county as provided for by Acts 1955, c. 283, and have and exercise throughout said county all the powers, functions and duties conferred on a metropolitan plan commission by Acts 1955, c. 283, in accordance with and as prescribed by said chapter.