**Rodney SPENDLOVE and Emily Spendlove, Appellants,**

v.

**ANCHORAGE MUNICIPAL ZONING BOARD OF EXAMINERS & APPEALS and Upper DeArmoun Area Homeowners Association, Inc., Appellees.**

**ANCHORAGE MUNICIPAL ZONING BOARD OF EXAMINERS AND APPEALS and Upper DeArmoun Area Homeowners Association, Inc., Cross-Appellants,**

v.

**Rodney SPENDLOVE and Emily Spendlove, Cross-Appellees.**

**Nos. 5663, 5680.**

Supreme Court of Alaska.

Feb. 22, 1985.

Rehearing Denied April 5, 1985.

---

**4.** This situation is similar to that posed in Illustration 5 of Restatement §. 348 cited above.

Steven P. Oliver, Anchorage, for appellants and Cross-Appellees.

Allan E. Tesche, Asst. Mun. Atty., Anchorage, Jerry Wertzbaugher, Mun. Atty., Anchorage, for appellee and cross-appellant Anchorage Mun. Zoning Board of Examiners & Appeals.

Edward G. Burton, Burr, Pease & Kurtz, Inc., Anchorage, for appellee and cross-appellant Upper DeArmoun Area Homeowners Ass'n, Inc.

Before RABINOWITZ, C.J., and MATTHEWS, COMPTON, and MOORE, JJ.

## OPINION

PER CURIAM.

This is an appeal from a decision of the Anchorage Municipal Zoning Board denying Rodney and Emily Spendlove (hereinafter "Spendlove") the use of twenty-two and one-half acres for mineral resource extraction. Following a lengthy trial de novo granted at Spendlove's request, the court entered judgment against Spendlove, enjoining mineral or natural resource extraction and dismissing Spendlove's appeal from the decision of the Zoning Board. Spendlove appeals, and the appellees, the Municipality and the DeArmoun Homeowners' Association, cross-appeal for attorney's fees. We affirm.

Prior to April 1969, the Spendlove property was regulated by an interim zoning ordinance of the Greater Anchorage Area Borough that did not categorically prohibit commercial mineral resource extraction operations. Effective in 1969, through the enactment of a new borough zoning ordinance known as GAAB I–69, the Spendlove property was zoned "U" or unrestricted, a zoning classification that permitted com-

mercial mineral resource extraction only if the use lawfully pre-dated the zoning as a valid non-conforming use or was allowed by special exception. In 1977, the Anchorage Assembly enacted Anchorage Municipal Code 21.55.090 requiring operators of non-conforming gravel pits such as Spendlove's to apply for and receive approval of amortization permits and development and restoration plans. Amortization permits are available only where the exploitation of mineral resources exists as a non-conforming use and has been in continuous existence since April 21, 1969. Both the Zoning Board and the trial court concluded that Spendlove had not established a non-conforming use for mineral resource extraction prior to April 1969.

■ In reaching this conclusion, the trial court held that only those mineral resource extractions that existed as commercial or industrial uses within the meaning of AMC 21.35.020(B)(59) constitute a use to which the law regarding non-conformities apply.

AMC 21.35.020(B)(59) provides:

'Mineral resources operations' or 'natural resources extractions' ('mineral or natural resources development') means *commercial or industrial operations* involving removal of ... gravel, rock, or any mineral and other operations having similar characteristics.[1]

(Emphasis added) Because Spendlove was enjoined from "mineral or natural resource extraction operations" it was appropriate for the trial court to determine whether Spendlove had established a *commercial* use prior to 1969.

■ The trial court also adopted a "substantial use" test for the level of commercial activity necessary to "rise to the level of a mineral resource extraction." The

substantial use test is consistent with zoning policy and favored by commentators:

Where the loss to the owner arising out of the curtailment of his prior use of the property is insubstantial, the loss is deemed balanced by the resulting effectiveness of the zoning ordinance on the implementation of the comprehensive plan of development of the community and the consequent benefits conferred thereby on all property owners therein.

4 A. Rathkopf, *The Law of Zoning and Planning* § 51.03, at 51–27 (4th ed.1984).[2] Substantial evidence exists on the record to support the court's finding that Spendlove's activities prior to 1969 were sporadic and insubstantial. The superior court properly enjoined Spendlove from mineral or natural resource extraction.

■ As to the appellees' cross-appeal for attorney's fees, we find that the award of $10,000.00 is reasonable and AFFIRM.

---

1. *See also* GAAB 21.05.020(B)(45), the predecessor to AMC 21.35.020(B)(59).

2. *See* 4 N. Williams, American Land Planning § 110.03, at 405–406 (1975); *see, e.g., Paukovits v. Zoning Board of Appeals,* 67 App.Div.2d 683, 412 N.Y.S.2d 167 (1979); *Blundell v. City of W. Helena,* 258 Ark. 123, 522 S.W.2d 661, 666 (1975); *Ashley v. City of Bedford,* 160 Ind.App.

634, 312 N.E.2d 863, 866 (1974); *Town of Lloyd v. Kart Wheelers Raceway, Inc.,* 28 App.Div.2d 1015, 283 N.Y.S.2d 756, 757 (1967).

Williams provides an extensive list of citations to cases that have "dismissed token and casual operations as insufficient." 4 N. Williams at 409.