JOHNSON OIL COMPANY, INC.,
Appellant–Plaintiff,

v.

AREA PLAN COMMISSION OF EVANS-
VILLE AND VANDERBURGH COUN-
TY and Board of Zoning Appeals of
Evansville and Vanderburgh County,
Appellees–Defendants.

No. 82A01–9812–CV–477.

Court of Appeals of Indiana.

Sept. 10, 1999.

Leslie C. Shively, Robert R. Faulkner, Fine & Hatfield, Evansville, Indiana, Attorneys for Appellant.

D. Timothy Born, Shawn M. Sullivan, Terrell, Baugh, Salmon & Born, LLP, Evansville, Indiana, Attorneys for Appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

In this consolidated appeal, Johnson Oil Company, Inc. challenges trial court orders in two separate causes of action. First, Johnson Oil appeals the orders of one trial court that dismissed its initial cause of action and struck its amended complaint thereon. Second, Johnson Oil appeals the order of another trial court that affirmed on judicial review the denial by Evansville and Vanderburgh County's Area Plan Commission ("Commission") and Board of Zoning Appeals ("Board") of Johnson Oil's request for a sixth access drive to its real estate.

We affirm.

### ISSUES

1. Whether it was error by the trial court to dismiss Johnson Oil's first cause of action or to strike its amended complaint thereto.

2. Whether, as a matter of law, Johnson Oil was entitled to a sixth access drive.[1]

---

1. Johnson Oil purports to raise six issues in its second appeal, *see* Johnson Oil's Brief at 1–2, but develops argument for only four. *See id.* at I. However, the essence of all its contentions is that

## FACTS

In 1997, Johnson Oil owned a parcel of real estate in Evansville that occupies a rectangular city block, with its longer dimension being east to west. Each side of the property is bordered by a public thoroughfare. Johnson Oil applied for an improvement location permit, with a site plan, pursuant to the Evansville Zoning Code. The site plan for a Big Foot Amoco gas station and convenience store on the property was considered by the Site Committee of the Commission, as required by the Code. The Committee did not grant the permit, and by letter dated December 9, 1997, the Commission informed Johnson Oil that the site plan submitted failed to comply with the Code.

At this point, on December 23, 1997, Johnson Oil filed its first action, a complaint for declaratory relief and damages. Johnson Oil alleged the denial of the requested permit was a taking of its property rights and interest, imposed standards not found in the Code, and violated its equal protection and procedural and substantive due process rights. The Commission filed a motion to dismiss, asserting that Johnson Oil had failed to exhaust administrative remedies. The trial court dismissed the complaint without prejudice on March 26, 1998. Johnson Oil then filed an amended complaint on April 7, 1998, reasserting its takings and violations of rights claims. Subsequently, the Commission filed a motion to strike, which the trial court granted on May 13, 1998.

According to the record of Johnson Oil's second legal action,[2] Johnson Oil submitted to the Site Committee a site plan for a "new Big Foot Store" on the west half of the property, six fuel pumps on the east half, and six access drives—two from each street along the length of the property and one from each of the north-south streets. The Committee approved a permit for the plan *except* for the southwestern access drive. The southwest-

ern access drive was proposed to be located forty feet from the parallel public street.

On January 12, 1998, Johnson Oil appealed the denial of approval for this sixth drive to the Board. The Board determined that the proposed sixth access drive did not comply with the Code's requirement that the drive be at least fifty feet from any parallel public street, and that the Committee "correctly withheld approval" of the sixth drive. (R. 74–75).[3] On March 23, 1998, Johnson Oil brought its second court action, seeking judicial review. The trial court found that the Board had "correctly affirmed" the Committee's disapproval of the sixth drive because it did not comply with the Code, (R. 2 at 112), and that the Code "does not entitle Johnson Oil to establish" the sixth drive where the approved plan "allows for access drives at five (5) different locations on the Property." (R. 2 at 114).

## DECISION

1. *Dismissal of First Action and Striking of Amended Complaint*

■ Johnson Oil argues that the trial court erred in dismissing its complaint "based upon its [apparent] belief that Johnson Oil had failed to exhaust its administrative remedies" because the trial court had jurisdiction over its civil rights claims, inverse condemnation claim, and (3) estoppel claim (that the Site Committee had promised to approve the permit sought). Johnson Oil's Brief at 5.

■ As indicated in FACTS, Johnson Oil's claims arose from the denial of the permit it sought based upon the site plan it submitted. The Code provided that a disapproval by the Site Committee could be appealed to the Board. Johnson Oil had failed to appeal to the Board when it filed its complaint in court. The Code also provides for the Board to review *de novo* the submission that was not approved by the Committee. Thus, pursuant

as a matter of law, the applicable ordinance requires approval of a permit that includes the sixth access drive.

**2.** Because of the two separate records, it is not clear whether the site plan at issue in the second cause of action is the same site plan upon which

the denial of permit approval generated Johnson Oil's first cause of action.

**3.** The record cites in this paragraph are found in the record of the second appeal.

to the Code, the Commission had "primary jurisdiction" to determine whether the permit should issue. *See Austin Lakes Joint Venture v. Avon Utilities, Inc.,* 648 N.E.2d 641, 645 (Ind.1995). After a decision is rendered by the Board, that decision is subject to judicial review by the court. *See* IND. CODE § 36–7–4–1003. Therefore, where an administrative remedy is available, such remedy must be pursued before the claimant is allowed access to the courts. *See Martin v. Monroe County Plan Comm'n,* 660 N.E.2d 1073, 1074 (Ind.Ct.App.1996), *trans. denied.*

In *Austin Lakes,* our supreme court discussed the proper invocation of primary jurisdiction when multiple issues were raised. 648 N.E.2d at 646–48. In an action where one—but not necessarily all—"of the issues in the case requires exhaustion of remedies before judicial review can occur," the trial court "must invoke the doctrine of primary jurisdiction." *Austin Lakes,* 648 N.E.2d at 647.

 The Commission contends that such is the case here. Johnson Oil responds that *Austin Lakes* also states that the exhaustion of remedies doctrine should not be applied mechanistically. *Id.* at 644. However, we find instructive in considering such a contention *Austin Lakes'* holding as to how courts should proceed when an issue is raised that can be considered by either the trial court or by the agency. *Id.* at 647. In such a case,

> the decision whether to invoke the doctrine of primary jurisdiction is within the discretion of the trial court. The questions to ask in deciding whether to invoke the doctrine include (i) what sort of facts will arise and whether the kind of factfinding involved will be within the special competence and expertise of an administrative body, and (ii) to what degree uniformity in the regulatory scheme is desirable and to what degree a court decision might affect the uniformity of a regulatory scheme.

*Id.* If such considerations were applied to Johnson Oil's complaint, in which the initial allegations are that Johnson Oil owns the real estate for which the improvement permit was sought and that the Commission is the agency charged with issuing such permits, the agency's expertise and consistent application of the Code's zoning scheme would weigh toward deferring to the Commission's primary jurisdiction. Moreover, even in the fact pattern where an issue may be decided by either the trial court or agency, it is within the trial court's discretion to dismiss the action without prejudice. *Town Bd. of Orland v. Greenfield Mills,* 663 N.E.2d 523, 528 n. 8 (Ind.1996) (citing *Austin Lakes* at 647). Based upon *Austin Lakes,* we do not find erroneous the trial court's order dismissing the complaint without prejudice.

After the order of dismissal, Johnson Oil filed an amended complaint in the first trial court. This complaint omitted the count alleging the imposition by the Commission of standards not found in the Code, but repeated the claims of a taking of property rights and violation of equal protection and procedural and substantive due process rights. The Commission moved to strike the amended complaint, asserting that the initial complaint had questioned the legality of the denial of a permit sought by Johnson Oil, that Johnson Oil had subsequently appealed to the Board for approval of its site plan, that the Board denied approval, and that an action for judicial review in that regard was now pending in another (second) trial court. The Commission contended that the first trial court lacked jurisdiction to adjudicate the issues raised in Johnson Oil's amended complaint until there was a final decision in the other action appealing the Board's decision. The first trial court then struck the amended complaint.

Johnson Oil contends that the first trial court erred in striking the amended complaint, asserting that because "the trial court erred in many ways in dismissing Johnson Oil's complaint," it "necessarily" erred in striking the amended complaint. Johnson Oil's Brief at 12. We have not found the trial court's order dismissing Johnson Oil's complaint to have been erroneous. Therefore, Johnson Oil's conclusory argument fails.

### 2. *Alleged Entitlement under Ordinance* [4]

 As Johnson Oil correctly notes, construction of a zoning ordinance is a question of law. *See Columbus Bd. of Zoning App. v. Big Blue,* 605 N.E.2d 188, 191 (Ind. Ct.App.1991). When we construe the language in a zoning ordinance, we follow the ordinary rules of statutory construction. *Id.* We interpret the ordinance as a whole and give its words their plain, ordinary, and usual meaning. *Id.*

The Evansville Zoning Code contains § 15.153.05.098 regarding access and service drives, providing as follows:

A. An access or service drive for any use may not be constructed over a public sidewalk or right-of-way without approval from the City Engineer. . . .

B. All uses are subject to the following requirements:

1. Access drives are determined as follows:

a. 0—200 feet of road frontage—1 access drive;

b. 200—400 feet—two access drives;

c. over 400 feet—access drives to be determined.

2. An access drive must be at least 50 feet from any parallel access drive on the same property, . . . .

\* \* \* \* \*

5. . . . . . Access drives in all [districts other than Residential–1] must be at least 50 feet from any parallel public street, measured from the nearest curb line of the street.

\* \* \* \* \*

C. The Site Review Committee shall also consider the following factors in approval of the site plan.

1. Automotive and pedestrian safety;

2. Traffic flow and control;

3. Accessibility for emergency vehicles; and

4. Effects of the access drives on abutting properties;

D. If the location or site of a lot prevents development in accordance with the above requirements, access shall be provided which most closely complies with these requirements. Access may not be denied to any property.

(R. 50, 113).

 According to Johnson Oil, the ordinance as a whole "determines the number of access drives based upon road frontage, then sets certain standards for spacing of those access drives internally within the property and in proximity to parallel streets." Johnson Oil's Reply at 4. Johnson Oil continues its argument with the assertion that section D of the Code "makes it clear that access rights are to prevail over strict compliance with spacing rights." Johnson Oil's Brief at 15. We do not agree.

Johnson Oil's argument begins with the premise [5] that the ordinance provides for an applicant with two hundred feet of frontage on one side of its property to be granted two access drives on that side. Johnson Oil's interpretation of the ordinance as providing those two access drives based simply upon the amount of frontage on one side of the applicant's property does not square with the plain meaning of the ordinance. The ordinance discusses a determination of the number of access drives that is made based upon the amount of "road frontage." The ordinance does not specify that consideration of the amount of road frontage in making a determination of the number of access drives is to be made one side at a time. Rather, the plain meaning of the ordinance is that an applicant has one total amount of road frontage that may be considered for access drives. Johnson Oil's frontage on public streets appears to total significantly more than four hundred feet.[6] Therefore, the plain meaning

---

4. Record cites in the succeeding discussion are to the record of the appeal of the second action filed.

5. Johnson Oil's argument to the Board and its brief to the trial court expressly claimed the ordinance "entitled" it to two access drives on its southern border. (R. 63, 85).

6. Johnson Oil told the Board it had "just shy of .300 feet," and told the trial court its frontage "only slightly exceeds 200 feet." (R. 105). Johnson Oil's application indicated the size of

of the ordinance provides for an applicant like Johnson Oil, with its more than four hundred feet of frontage, to have a number of access drives "to be determined" under § 15.153.05.098(B)(1)(c).

We also disagree with Johnson Oil's conclusion that section D "prevails" over the requirements of sections A, B, and C. First, section D begins with the word "if." The word "if" is commonly used to express a condition. *Matlock v. Lock*, 38 Ind.App. 281, 73 N.E. 171, 178 (1905). "If," the conditional phrase, is followed by "the location or site of a lot prevents development in accordance with the above requirements." It is upon this condition that "access shall be provided which most closely complies" with the foregoing requirements. According to the Board, "neither the location nor site of Johnson Oil's lot prevents the establishment of two access drives along [the southern street] that meet Zoning code requirements," but rather Johnson Oil's designed plan for the convenience store and fuel pumps prevents compliance. Board's Brief at 11. Johnson Oil's reply is that compliance could only be achieved "without the construction of the proposed improvements and buildings necessary for operation of Johnson Oil's business." Johnson Oil's Reply at 6. The ordinance does not indicate that if the applicant's proposed improvement plan does not make compliance possible, then near-compliance will allow the access proposed. Finally, section D ends with the statement that "access may not be denied to any property." It appears to be undisputed that access has not been denied to Johnson Oil's property by the denial of approval for a sixth access drive. Nevertheless, Johnson Oil argues that because it was "entitled to all" six access drives "based upon the frontage standards," it has indeed been denied access. Johnson Oil's Reply at 6. This argument is circular and takes us back to our starting point, a place we will not revisit.

The ordinance, by its plain meaning, does not require approval of Johnson Oil's applica-

the real estate to be "126.5' X 225." (R. 31). However, Johnson Oil does not challenge the

tion for a sixth access drive on the southern border of its property. We affirm.

KIRSCH, J., and BROOK, J., concur.

trial court's finding that the southern frontage is 243 feet.